ROULO v. MINOT.

1. ELEVATORS—INJURY TO PASSENGER — NEGLIGENCE— CONTRIBU-
TORY NEGLIGENCE—QUESTIONS FOR JURY.

Plaintiff entered an elevator, and asked to be let off at the office of a tenant which was on the twelfth floor, but plaintiff did not know on which floor the office was located. All the passengers had left when the ninth floor was reached, where the elevator was stopped, and the doors opened, to let on a passenger, whom plaintiff did not see. Plaintiff, thinking the elevator had stopped to let him off, started to alight, and was caught and injured by the elevator starting at the same time. The conductor began closing the doors as the elevator started. *Held,* that whether the conductor was guilty of negligence, and plaintiff of contributory negligence, were questions for the jury.

2. SAME—OPEN DOORS.

Under ordinary circumstances, an open door and a stationary elevator constitute an invitation to all persons to enter or leave at will.

Error to Wayne; Hosmer, J. Submitted January 7, 1903. (Docket No. 12.) Decided March 5, 1903.

Case by Gilbert C. Roulo against Laurence Minot and others for personal injuries. From a judgment for plaintiff, defendants bring error. Affirmed.

*Edwin F. Conely* and *Orla B. Taylor,* for appellants.

*John T. Nichols* and *Alexander H. Sibley,* for appellee.

MONTGOMERY, J. Plaintiff sues to recover damages for injuries received while attempting to leave one of the elevators in defendants' building. The case was submitted to a jury under instructions which are not complained of, and a verdict given for the plaintiff. The only question on this appeal is whether there is any evidence to support

this finding. In considering this question, the testimony of the plaintiff must be taken as true, and shows the facts as follows: Plaintiff, who had never been in the elevator before, entered the elevator, and asked to be let off at the office of the Detroit, Romeo, Rochester & Lake Orion Railway. He did not know upon what floor the office was situated, and the elevator conductor did not inform him. As a matter of fact, the office was on the twelfth floor. When the elevator started, several persons were in it, but all had left except plaintiff before the ninth floor was reached. The elevator was provided with two doors on the same side of the car, which were operated simultaneously by the conductor, who stood between them, with his back to the car and passengers. Upon reaching the ninth floor, the elevator was stopped, and the doors were opened. There being no other person in the elevator, the plaintiff concluded that was the floor at which he was to get out, and that the elevator had stopped for him, and he started to leave the car. At this time the doors of the elevator were open, and the elevator stationary. Just as he was stepping out, the elevator started, and at the same time the conductor began to close the doors. Plaintiff was caught by the door of the entrance through which he was attempting to pass, and, before the elevator could be stopped, he was crushed against the overhead framework, and his back broken.

The manner in which the elevator was operated is, briefly, this: The conductor stands between the two doors, facing the hall. With his right hand he operates a wheel which causes the elevator to move up or down, depending on the way it is turned. With his left hand he opens and closes the two doors. He does both of these things at about one and the same time. It appears by the testimony of the conductor that the stop at the ninth floor was made in response to a signal, and for the purpose of taking on a passenger. The plaintiff testified, however, that he did not see this passenger enter the car, nor see him at all until after he was caught in the door as above

described, while the conductor testifies that there was nothing to prevent the plaintiff's seeing the other passenger (Mr. Ronald). The plaintiff's statement is by no means incredible, as Ronald testifies he did not see plaintiff until he (Ronald) got into the elevator; and as plaintiff was facing one door, and Ronald entered at the other, his statement is reasonable.

The sole question is whether, under this state of facts, the case should have been withdrawn from the jury. The circuit judge instructed the jury as to the defendants' duty as follows:

"It is, of course, incumbent upon the person in charge of the elevator to use that ordinary degree of care which a person under like circumstances would use in closing the door and in starting the elevator; and I think you may properly find, if you see fit, from the case, that it was his duty to close the door, in this instance, before starting the car. But in view of what was said by the plaintiff, between the plaintiff and the conductor, at his entrance in the elevator, I am not prepared to say that you should find this; and you may, perhaps, gentlemen of the jury, as legitimately find that, under the circumstances of the case, the conductor had no reason to believe that he was to leave the car, and therefore acquit the conductor of negligence. I think what the duty was, and what was required of both parties at that point, presents a question for you, rather than a question for the court."

And, as to the care required of plaintiff under the circumstances, the court said to the jury:

"If you believe from the evidence that the plaintiff in this case, on or about the 5th of January, 1901, was rightfully in the elevator in the possession of and operated by the defendants in their building, for the purpose of being carried thereby from one floor of the building to another, and if you further believe from the evidence that while the plaintiff was so in such elevator, and in the exercise of reasonable and ordinary care on his part, the said elevator was stopped at one of the floors, and while said elevator was thus stationary, and the door thereof was open, the plaintiff, without negligence on his part, and with all convenient speed, attempted to get out, and before he could

do so the servant of the defendants in charge of the elevator negligently and carelessly closed the door upon him, and suddenly started the elevator, by reason whereof plaintiff was injured, then the plaintiff would be entitled to a verdict at your hands. But I say to you with reference to that, gentlemen of the jury, that, considering the colloquy between the plaintiff and the conductor, you may consider the question of attempting to leave that car without warning to the conductor. I do not say that his attempt, as I said before, would in itself be evidence from which I could say to you that an attempt to leave was negligence; but I think it is a question for you, gentlemen of the jury, and for you to determine, where the negligence, if you find negligence, occurred at that point."

We think these instructions fairly presented the issues for the jury. Under ordinary circumstances, an open door and a stationary elevator constitute an invitation to all persons desiring to do so to enter or leave at will. An attempt to start the elevator without taking the precaution of closing the door might very well, in the absence of any fact which amounted to an assurance that no one expected to either enter or alight, be held negligence. And whether this duty of attention to the plaintiff was excused by the colloquy between the plaintiff and the conductor was, at the most, a question for the jury. And so whether, in view of this talk had between the plaintiff and the conductor on entering the car, the plaintiff was guilty of negligence in attempting to leave without first, in words, acquainting the conductor with his purpose, or whether he had the right to assume that the car would not be started until the door was closed, was likewise a question for the jury.

The judgment will be affirmed, with costs.

HOOKER, C. J., MOORE and GRANT, JJ., concurred. CARPENTER, J., did not sit.